United States District Court
Southern District of Texas
**ENTERED**
April 26, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RADLEY BRADFORD, individually and on behalf of all others similarly situated, § § § § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-23-3460 |
| BRIDENT DENTAL SERVICES, LLC, § § | |
| Defendants. § § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, Radley Bradford, ("Plaintiff" or "Bradford"), brings this class action, individually and on behalf of all others similarly situated, against Defendant, Brident Dental Services, LLC ("Brident" or "Defendant"), for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.[1] Pending before the court is Defendant Brident Dental Services, LLC's Motion to Compel Arbitration, Strike Class Allegations, and Dismiss Complaint ("Defendant's Motion to Compel Arbitration, Strike, and Dismiss") (Docket Entry No. 13). Also pending is Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration, Strike Allegations, and Dismiss Complaint ("Plaintiff's Response") (Docket Entry No. 16), and Defendant Brident Dental Services, LLC's Reply in Support of Motion to Compel Arbitration, Strike Class Allegations, and Dismiss Complaint ("Defendant's Reply") (Docket Entry No. 17). For the reasons stated below Defendant's Motion to Compel Arbitration, Strike, and Dismiss will be granted.

---

[1] Class Action Complaint, Docket Entry No. 1.

## I. **Factual Allegations and Procedural Background**

### A. **Factual Allegations**

Asserting that Brident provides dental services to consumers, and that as part of its business model, it sends text messages to consumers in part to solicit them for dental services, Bradford alleges that "when consumers opt-out of receiving their text message communications, Defendant Brident continues to send them text messages."[2]

Bradford alleges that he registered his cell phone number on the do not call list on March 31, 2019,[3] and that he "uses his cell phone . . . for personal and household use only as one would use a residential land line."[4]  Bradford alleges that on January 16, 2023, he received a text message solicitation sent by Brident at 10:02 AM from the shortcode 86528,[5] which included the instruction "Reply STOP to opt out," that at 6:01 PM on January 16, 2023, he replied "Stop" to 86528, and that immediately thereafter he received a confirmation text message that his stop request was received and his phone number would be added to Brident's "Do Not Text list."[6]  Bradford alleges that nevertheless, Brident sent him

---

[2]Id. at 4 ¶ 15.  Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[3]Id. ¶ 17.

[4]Id. ¶ 18.

[5]Id. at 5 ¶ 19.

[6]Id. ¶ 20.

text messages soliciting his dental business during 2023 on July 7th, July 10th, July 14th, July 17th, July 18th, July 21st, July 24th, July 28th, July 31st, August 4th, August 7th, August 11th, August 14th, August 18th, August 21st, August 25th, September 1st, and September 8th.[7]  Bradford alleges that

> [t]he unwanted solicitation text messages that [he] received from Defendant Brident have harmed [him] in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.[8]

Bradford seeks redress for these injuries, on behalf of himself and a class of similarly situated individuals under the TCPA.[9]

## B.  Procedural Background

Bradford initiated this action on September 15, 2023, by filing a Class Action Complaint (Docket Entry No. 1) "to stop . . . [Brident] . . . from violating the [TCPA] by sending text messages to consumers after specifically opting out of receiving further phone communications from [Brident]."[10]  On March 25, 2024, Brident filed the pending Motion to Compel Arbitration, Strike, and Dismiss, and on April 15, 2024, Bradford filed his response.

---

[7] Id. at 6-12 ¶¶ 21-38.

[8] Id. at 12 ¶ 39.

[9] Id. ¶ 40.

[10] Id. at 1.

## II. **Analysis**

Asserting that when he obtained dental services, Bradford executed a valid and binding arbitration agreement and class action waiver that governs his claims, Brident argues that Bradford's "individual claim should be compelled to arbitration, the class allegations stricken, and this action dismissed, because Plaintiff's claims are subject to a binding and enforceable arbitration agreement and class action waiver."[11] Without disputing that he signed Brident's arbitration agreement, that his claims fall within the scope of the agreement, and that the court may dismiss this action if Brident's motion is granted, Bradford responds that

> [t]he [c]ourt should deny Brident's motion in total because the Arbitration Agreement (ECF 13-1 at Ex. B) is unenforceable. To become effective and enforceable, the Arbitration Agreement required (1) both parties' signatures and (2) Brident's delivery of the dually signed agreement to Mr. Bradford. However, it is undisputed that Brident never signed the Arbitration Agreement or delivered a fully executed copy of it to Mr. Bradford. The Arbitration Agreement therefore never became effective, and there is accordingly no basis to enforce it to compel arbitration or strike Plaintiff's class allegations.[12]

Brident replies that Bradford's arguments fail because the cases on which he relies are distinguishable from the facts of this action.[13]

---

[11]Defendant's Motion to Compel Arbitration, Strike, and Dismiss, Docket Entry No. 13, p. 1.

[12]Plaintiff's Response, Docket Entry No. 16, p. 1.

[13]Defendant's Reply, Docket Entry No. 17, p. 2.

**A.   Applicable Law**

Under the Federal Arbitration Act, a party is entitled to enforce an arbitration agreement where (1) there is a valid agreement to arbitrate and (2) the dispute falls within the scope of that agreement.  See Huckaba v. Ref-Chem, L.P., 892 F.3d 686, 688 (5th Cir. 2018) (citing Klein v. Nabors Drilling USA LP, 710 F.3d 234, 236 (5th Cir. 2013)).  If the court finds that a valid agreement to arbitrate exists and that the claims asserted fall within the scope of that agreement, the court is required to compel arbitration.  Id.  If, however, the court finds that there is no arbitration agreement between the parties, or that no dispute falls within the scope of a binding arbitration agreement, the court must deny the motion to compel arbitration with prejudice.  Id. at 531-32.  The court's "sole responsibility is to determine whether this dispute is governed by an arbitration [agreement], not to determine the merits of the dispute."  Pennzoil Exploration & Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998).  Because Plaintiff does not dispute that the claims asserted in his Class Action Complaint fall within the scope of the arbitration agreement, only the first element is at issue in this case.

"Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court."  Huckaba, 892 F.3d at 688 (citing Kubala v. Supreme Production Services, Inc., 830 F.3d 199, 202 (5th Cir. 2016)).  The parties agree that

Texas law applies.[14]  Formation of a binding contract under Texas law requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds, (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." Id. at 689 (internal citations omitted).  "In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." Id. (quoting Italian Cowboy Partners, Ltd. v. Prudential Insurance Company of America, 341 S.W.3d 323, 333 (Tex. 2011)).  "In identifying such intent, [courts] must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." Id. (quoting J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003)). Because Texas has no presumption in favor of arbitration, J.M. Davidson, 128 S.W.3d at 227, the strong federal policy favoring arbitration does not apply to this step of the analysis. Huckaba, 892 F.3d at 689.  The party seeking to compel arbitration must show that the agreement satisfies all of the elements for the formation of a binding contract. Id. at 688 (citing J.M. Davidson, 128 S.W.3d at 228).

---

[14]See Defendant's Motion to Compel Arbitration, Strike, and Dismiss, Docket Entry No. 13, pp. 5-9 (citing Texas law in support of its argument that the arbitration agreement is enforceable); Plaintiff's Response, Docket Entry No. 16, pp. 1-6 (citing Texas law in support of its argument that the arbitration agreement is not enforceable).

"[W]hether a signature is required to bind the parties is a question of the parties' intent." Huckaba, 892 F.3d at 869 (citing Tricon Energy Ltd v. Vinmar International, Ltd., 718 F.3d 448, 454 (5th Cir. 2013)). "Signatures are not required '[a]s long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract.'" Huckaba, 892 F.3d at 689 (citation omitted). See also Phillips v. Carlton Energy Group, LLC, 475 S.W.3d 265, 277 (Tex. 2015) ("[W]hile signature and delivery are often evidence of the mutual assent required for a contract, they are not essential. 'Texas law recognizes that a contract need not be signed to be "executed" unless the parties explicitly require signatures as a condition of mutual assent.'"); Mid-Continent Casualty Co. v. Global Enercom Management, 323 S.W.3d 151, 157 (Tex. 2010)(per curiam) (recognizing that a signature is not required to make a contract binding and enforceable, unless the parties explicitly require signatures as a condition of their mutual assent). "A court may decide intent as a matter of law." Huckaba, 892 F.3d at 869 (citing Tricon Energy, 718 F.3d at 454).

**B.   Application of the Law to the Facts**

   1.   The Parties Have a Valid Agreement to Arbitrate

Citing the Declaration of Sushma Gohil ("Gohil Declaration") and the Arbitration Agreement's Waiver of Right to Jury Trial signed by Randy Bradford and dated December 29, 2022, Brident

-7-

argues that Bradford is bound by a valid and enforceable agreement to arbitrate.  Gohil states in his declaration that he is Vice President of Risk Management and Regulatory Affairs at Western Dental Service, Inc., which is an affiliate and agent of Brident,[15] that he has held his current position since November of 2019, that as part of his responsibilities he has personal knowledge of the manner and method by which Brident prepares and maintains normal business records for  accounts, and that in this capacity he has reviewed Bradford's records.[16]  Gohil states that

> Brident has policies and procedures in place regarding forms and disclosures that are provided to individuals when they visit a Brident dental office for treatment. As part of these policies and procedures, when a person visits a Brident dental office for the first time or for the first time in over a year, they are provided with a "new patient packet."  The new patient packet includes multiple documents, including a document titled, "Arbitration Agreement Waiver of Right to Jury Trial" ("Arbitration Agreement").  This practice regarding the new patient packet and Arbitration Agreement has been in place for more than ten (10) years.  Throughout this time, Brident's policies and procedures have directed all locations of its dental offices to request that new patients (or patients returning after at least one year) complete and return the forms in the new patient packet. . . . Brident created the Arbitration Agreement and understands the document to be binding upon a patient's signature on that document.  After a patient signs the form, Brident's dental office maintains that document in the records for that patient, which it refers to as the patient's chart.[17]

---

[15] Gohil Declaration attached to Defendant's Motion to Compel Arbitration, Strike, and Dismiss, Docket Entry No. 13-1, p. 1 ¶ 1.

[16] Id. at 1-2 ¶ 2.

[17] Id. at 2-3 ¶ 4.

Gohil also states that

> Brident's business records reflect that, on or about December 29, 2022, a person identifying himself as Randy Bradford obtained dental services from Brident. . . . Brident's records reflect that the dental office presented the Arbitration Agreement to Mr. Bradford, which he signed. Thereafter, Brident stored the signed Arbitration Agreement in Mr. Bradford's chart. Attached hereto as Exhibit B is a true and correct copy of the Arbitration Agreement signed by Mr. Bradford.[18]

In pertinent part the Arbitration Agreement Waiver of Right to Jury Trial signed by Bradford provides:

> Article 1: Agreement to Arbitrate Medical Malpractice and Other Disputes: . . . It is . . . understood that any dispute related to or arising from any . . . solicitations, and/or marketing relating to any medical or dental services offered by or rendered by Brident Dental will be determined by submission to arbitration as provided pursuant to the terms outlined herein.
>
> Article 2: All Claims Must Be Arbitrated: It is the intention and agreement of the parties that this arbitration agreement shall cover all claims or controversies relating to the matters described in Article 1 above, . . . whether in tort (intentional or negligent), contract, or otherwise, including but not limited to suits relating to the matters described in Article 1 and also involving claims for . . . emotional distress or punitive damages. . .
>
> Article 3: Class Action Waiver: It is the intention and agreement of the parties that any arbitration brought pursuant to this agreement shall be conducted on an individual basis only, and not on a class, collective, or representative basis. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective . . . or representative action, or as a member in any purported class, collective, representative proceeding ("Class Action Waiver"). . .[19]

---

[18] Id. at 3 ¶ 5.

[19] Arbitration Agreement, Exhibit B to Gohil Declaration, Docket
(continued...)

Relying primarily on Thompson v. Thompson-Hamilton Engineering Services, LLC, No. 03-22-00155-CV, 2023 WL 8815161, * 3-*5 (Tex. App. — Austin December 21, 2023, no pet.), Bradford argues that the arbitration agreement never became effective because Brident neither signed the agreement nor returned the fully executed agreement to him.[20]  Bradford argues that

> [t]he Arbitration Agreement (ECF 13-1 at Ex. B) clearly expresses the intent that both Mr. Bradford's and Brident's signatures were required for the reciprocal promises contained in the contract to become effective. Specifically, the Arbitration Agreement includes a signature block immediately preceded by Brident's express "agree[ment] to be bound by the terms" of the Arbitration Agreement, as signified by its signature, which was to be the sole "consideration" for Mr. Bradford's reciprocal agreement to arbitrate and waive the right to pursue a class action. . . 
>
> Consistent with the intent that both parties sign to render the Arbitration Agreement effective, directly below Brident's signature block, in bold, the agreement required Brident to deliver a fully "signed copy" of the agreement — i.e., after Brident has signed it — to Mr. Bradford.
>
> Nothwithstanding, Brident failed to sign the agreement and deliver a fully signed copy of it to Mr. Bradford. As a result, by its own express terms, the Arbitration Agreement never became effective and enforceable.[21]

---

[19](...continued)
Entry No. 13-1, pp. 7-8.

[20]Plaintiff's Response, Docket Entry No. 16, pp. 1-2.

[21]Id. at 2-3.

Bradford argues that

> [t]he fact that Brident may have subjectively believed that [the] Arbitration Agreement was enforceable without counter-signing it and delivering it to Mr. Bradford was expressly contemplated in the contract is irrelevant because the agreement itself evidences the parties' intent that they be bound only after both signing it.[22]

Brident responds that Thompson and the other cases upon which Bradford relies are distinguishable because none of the circumstances upon which those courts relied are present in this case. The court agrees.

Thompson involved a dispute between parties who co-owned an engineering firm. After the parties attended a mediation the mediator circulated a draft settlement agreement to parties that contained a provision for "further disputes between the parties [to] be submitted to binding arbitration before [the mediator]." 2023 WL 8815161, at *1. The agreement was never signed by either party or filed with the trial court. One of the parties later filed a motion for contempt, seeking to enforce an agreed temporary injunction, arguing that the settlement agreement never became effective. The other party moved to compel arbitration arguing that the settlement agreement was valid and enforceable and required the trial court to send the matter to arbitration. The trial court granted the motion for contempt and denied the motion to compel arbitration. Id. at *2. The appellate court affirmed

---

[22] Id. at 6.

the trial court's denial of the motion to compel arbitration upon finding that "[s]everal parts of the Agreement express an intent that the parties' signatures are required for it to become effective." Id. at *4. The court observed that the agreement expressly stated that

> [t]oday the undersigned mediated with Patrick Keel. After consulting with their attorneys, the parties and their attorneys now sign this document to memorialize the terms of their agreement under § 154.071 of the Texas Civil Practice & Remedies Code and Rule 11 of the Texas Rules of Civil Procedure.
>
> Although the mediator assisted in drafting this agreement, the parties and their attorneys thoroughly reviewed the document and made or had the opportunity to make any changes that the parties desired. The parties sign this agreement of their own free will and without duress, relying on their own understanding of the agreement and the advice of their attorneys.

Id. The court also observed that the agreement concluded "Signed on February 12, 2021," followed by signature blocks for each of the parties to sign in both their individual and representative capacities, along with lines for each of their attorneys to approve the agreement as to form. Id. The court explained that the agreement incorporated § 154.071 of the Texas Civil Practices & Remedies Code and Rule 11 of the Texas Rules of Civil Procedure, both of which require the signing of a written agreement to establish an enforceable settlement agreement. The court concluded that "the Agreement unambiguously requires the parties' signatures to become effective, and the undisputed evidence establishes that the Agreement was not signed by the parties. Therefore, we hold that it is not enforceable." Id. at *5.

Bradford cites <u>Thompson</u> in support of his argument that the arbitration agreement is not enforceable, but without applying the holding in <u>Thompson</u> to the facts in this case. While he correctly points out that the <u>Thompson</u> court held an unsigned arbitration agreement was not enforceable, Bradford fails to acknowledge that the agreement in <u>Thompson</u> was not signed by either party. While Bradford acknowledges that the <u>Thompson</u> court cited several factors that supported its holding, he fails to acknowledge that only one of those factors exists in this case, <u>i.e.,</u> the existence of a signature block for Brident. But "Texas courts have held that a signature block by itself is insufficient to establish the parties' intent to require signatures." <u>Huckaba,</u> 892 F.3d at 689 (citing cases). <u>See also Wright v. Hernandez,</u> 469 S.W.3d 744, 760 (Tex. App. — El Paso 2015, no pet.) (holding that "the presence of signature block in a contract, standing alone is insufficient to establish that a party's signature is a condition precedent to the enforceability of a contract"). Unlike the settlement agreement at issue in <u>Thompson,</u> the arbitration agreement at issue here does not expressly state that the parties and their attorneys sign this document to memorialize the terms of their agreement under any Texas statute or rule of civil procedure that require signatures. Without more, neither <u>Thompson</u> nor any of the other cases cited by Bradford support his argument that the parties intended Brident to sign the arbitration agreement before it became effective. <u>See e.g., Simmons & Simmons Construction Co. v. Rea,</u> 286 S.W.2d 415, 416-19 (Tex. 1955) (holding agreement that only one party had

-13-

signed was ineffective where agreement stated that the parties' signatures had to be sworn and notarized, and opposing party not only rejected the agreement after it had been signed but also failed to accept any benefits under the agreement).

Moreover, the arbitration agreement does not require Brident's signature to be enforceable against Bradford. Immediately above Bradford's signature the agreement states:

> I understand that this Contract is voluntary and that if I do sign it, I may rescind it only by giving written notice which must be delivered to and received by Brident Dental at the address outlined in Article 4 within 30 days of signature.
>
> I understand that I have the right to receive a copy of this Contract. By my signature below, I acknowledge that I have read and understand the Contract, agree to its terms, and have received a copy.
>
> **NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE AND ANY ISSUE OUTLINED IN ARTICLE 1 DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT.**[23]

Immediately above the signature block for Brident, the agreement states:

> BRIDENT DENTAL'S AGREEMENT TO ARBITRATE
>
> In consideration of the foregoing agreements under this Contract, Brident Dental likewise agrees to be bound by the terms set forth in this Contract and to the rules specified in Article 4 above.[24]

---

[23] Arbitration Agreement, Exhibit B to Gohil Declaration, Docket Entry No. 13-1, p. 8.

[24] Id.

This language refers to Bradford — and not to Brident — signing the agreement and giving up his right to a jury or court trial. This language distinguishes this case from Thompson and other cases on which Bradford relies. See Escalera v. Murphy Well Control, LLC, No. MO:22-CV-176-DC-RCG, 2023 WL 8112499, *3 (W.D. Tex., October 13, 2023), report and recommendation adopted, 2023 WL 7181264 (W.D. Tex. October 31, 2023) (holding that a similar provision exclusively referred to the signature of only one party, not both parties to an arbitration agreement). Thus, Bradford's argument that Brident's signature was needed to provide consideration for his agreement to arbitrate is contradicted by the plain language of the agreement.

Under Texas law, when a party's signature is missing, that party's conduct reflecting action in accord with the contract's terms evidences assent. See SK Plymouth v. Simmons, 605 S.W.3d 706, 718 (Tex. App. — Houston [1st Dist.] 2020, no pet.). It is undisputed that Brident prepared the Arbitration Agreement on its letterhead, and presented it to Bradford for him to sign voluntarily, as it does for every patient visiting a Brident dental office for the first time or for the first time in over a year. Brident kept Bradford's signed agreement in his file, and then sought to enforce the agreement against Bradford upon the filing of this suit. Texas courts have found that these actions evidence a business' intent to be bound even when the business has not signed

an arbitration agreement.  See Wright, 469 S.W.3d at 761 ("In determining whether an employer intended to be bound by an arbitration agreement in the absence of the employer's signature on the agreement, courts have considered various actions taken by the employer, including the employer's act of drafting the arbitration agreement, its actions in maintaining the agreement as a business record, and its actions in moving to enforce the agreement when the employee filed suit against it.").

Because there is no language in the Arbitration Agreement from which the court can conclude that the parties intended to require signatures of both parties to create a binding contract, and because Bradford fails to offer evidence that the parties intended the arbitration agreement to be binding only after both parties had signed it, the court concludes that there was a valid arbitration agreement between Bradford and Brident.  See Trujillo v. Volt Management Co., 846 F. App'x 233, 235-36 (5th Cir. 2021) (per curiam) (holding that the absence of a party's signature did not invalidate an arbitration agreement because there was no express language in the agreement stating that the parties would be bound only if the document were signed).  Because Bradford does not dispute that his claims fall within the scope of the parties' Arbitration Agreement, Bradford will be compelled to arbitrate with Brident.

2.  <u>The Arbitration Agreement Includes a Class Action Waiver</u>

Citing Federal Rules of Civil Procedure 23(c)-(d) for authorizing courts to strike class allegations at the pleading stage upon a determination that a class action is inappropriate, and citing <u>Carter v. Countrywide Credit Industries, Inc.</u>, 362 F.3d 294, 298 (5th Cir. 2004), for holding that class action waivers in arbitration agreements are enforceable and do not deprive plaintiffs of substantive rights, Brident moves the court to strike Bradford's class action allegations as inappropriate because the parties' enforceable arbitration agreement contains a class action waiver.[25] Other than to dispute the enforceability of the Arbitration Agreement, Bradford has not responded to Brident's motion to strike the class allegations.

In pertinent part the Arbitration Agreement states that

> [i]t is the intention and agreement of the parties that any arbitration brought pursuant to this agreement shall be conducted on an individual basis only, and not on a class, collective, or representative basis. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective . . . or representative action, or as a member in any purported class, collective, representative proceeding ("Class Action Waiver").[26]

Moreover, the Arbitration Agreement states that "[d]isputes regarding the validity and enforceability of the Class Action

---

[25]Defendant's Motion to Compel Arbitration, Strike, and Dismiss, Docket Entry No. 13, p. 10.

[26]Arbitration Agreement, Exhibit B to Gohil Declaration, Docket Entry No. 13-1, p. 7.

-17-

Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator."[27] The court must therefore determine whether Bradford has waived class arbitration.

The Fifth Circuit has held that a class action proceeding is not a substantive right, and that arbitration agreements containing class waivers are enforceable. Carter, 362 F.3d at 298. See also D.R. Horton, Inc. v. National Labor Relations Board, 737 F.3d 344, 357 (5th Cir. 2013) ("the use of class action procedures . . . is not a substantive right"). For the reasons stated above in § II.B.1, the court has concluded that the Arbitration Agreement is enforceable, and that Brident's motion to compel arbitration should be granted. Because the enforceable Arbitration Agreement contains an expressly stated class action waiver, the court concludes that Bradford's class allegations should be stricken and that any arbitration must be conducted on an individual basis. Accordingly, Brident's motion to strike Bradford's class allegations will be granted.

    3.   The Action Will Be Dismissed Without Prejudice

Citing Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992), Brident argues that this action should be dismissed "because the entirety of issues raised in Plaintiff's

---

[27] Id.

Complaint are subject to the Arbitration Agreement."[28]  Bradford has not responded to this argument.

In <u>Alford</u> the Fifth Circuit explained that although the Federal Arbitration Act provides that when an issue is referable to arbitration under agreement, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[,] 9 U.S.C. § 3," that "this rule . . . was not intended to limit dismissal of a case in the proper circumstances.  The weight of authority clearly supports dismissal of the case when <u>all</u> of the issues raised in the district court must be submitted to arbitration."  975 F.3d at 1164.  Because for the reasons stated above in § II.B.1, the court has concluded that Bradford's claims are subject to an enforceable Arbitration Agreement, and because for the reasons stated above in § II.B.2, the court has concluded that the Arbitration Agreement contains a class-action waiver and that Bradford's class action claims, therefore, must be stricken and his remaining claims arbitrated individually, the court concludes that this action should be dismissed without prejudice because all of Bradford's claims must be submitted to arbitration.  See <u>Abugeith v. Flowers Foods, Inc.</u>, No. H-17-2934, 2018 WL 2222191, *4 (S.D. Tex. May 15, 2018) ("Because the Arbitration Agreement contains a class-action waiver

---

[28]Defendant's Motion to Compel Arbitration, Strike, and Dismiss, Docket Entry No. 13, p. 12.

and because the Arbitration Agreement and the class-action waiver are enforceable, the court concludes that Plaintiff must submit to individual arbitration. The court will therefore grant Defendants' Motion to Dismiss and compel Plaintiffs to arbitrate this dispute individually.").

### III.   Conclusions and Order Compelling Arbitration

For the reasons stated above in § II.B.1, the court concludes that the parties agreed to arbitrate Bradford's claims; for the reasons stated above in § II.B.2, the court concludes that any arbitration must be conducted on an individual — not a class — basis and, therefore, that Bradford's class allegations should be stricken; and for the reasons stated above in § II.B.3, the court concludes that Bradford's claims should not be stayed but, instead, dismissed without prejudice to Bradford's right to pursue individual arbitration with Brident. Accordingly, **BRADFORD IS COMPELLED TO ARBITRATE HIS CLAIMS INDIVIDUALLY WITH BRIDENT**; Bradford's class action allegations are **STRICKEN**; and Defendant Brident Dental Services, LLC's Motion to Compel Arbitration, Strike Class Allegations, and Dismiss Complaint, Docket Entry No. 13, is **GRANTED**.

**SIGNED** at Houston, Texas, this 26th day of April, 2024.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE